UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Julie Thompson

      Plaintiff,                              Case No.
                                              Hon.
v.                                              Magistrate

URS Corporation, and
URS Energy & Construction, Inc.,

      Defendants

---

Andrea J. Johnson (P74596)
Pitt, McGehee, Palmer & Rivers PC
Attorneys for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
Tel: 248-398-9800
Fax: 248-398-9804
ajohnson@pittlawpc.com

---

**COMPLAINT AND JURY DEMAND**

Plaintiff Julie Thompson complains against URS Corporation and URS Energy & Construction, Inc., as follows:

**INTRODUCTION**

1.      This is a discrimination & retaliation action brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2701, *et seq.*

2.      In this action, Plaintiff seeks legal & equitable damages to enforce her rights under Title VII and the ELCRA to be free from gender discrimination and retaliation as alleged in this Complaint.

## JURISDICTION, VENUE and PARTIES

3.      Plaintiff Thompson, a female, resides in Carleton, Michigan.

4.      Defendants URS Corporation and URS Energy & Construction, Inc., are corporations operating in Monroe County, Michigan.

5.      This Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 because the claims arise under federal law.

6.      This Court has supplemental jurisdiction over Plaintiff's state ELCRA claims because the ELCRA claims arise out of the same set of facts as Plaintiff's federal claims, such that all claims form part of the same case or controversy.

7.      This Court has personal jurisdiction over Defendants URS Corporation and URS Energy & Construction, Inc., because the companies conduct substantial business in Monroe County, Michigan, located in the Eastern District of Michigan, and the events giving rise to this action occurred in the Eastern District of Michigan.

8.      Venue is proper in the Eastern District of Michigan, Southern Division, because the events giving rise to the action occurred in this district and division.

9.      Plaintiff has exhausted her administrative remedies by timely filing with the Equal Employment Opportunity Commission ("EEOC").

10.     The EEOC issued a determination finding that there is reasonable cause to conclude that Defendants violated Plaintiff's rights under Title VII by subjecting her to different terms and conditions of employment and discharge in retaliation for engaging in protected activity.

11.     Plaintiff received a dismissal and right to sue notice from the EEOC dated November 25, 2014.  She timely files this action within 90 days of receipt of this notice.

## STATEMENT OF FACTS

12.    Plaintiff Julie Thompson began her employment with Defendants on February 7, 2011 as a Clerk III/Administrator and worked continuously in a successful manner until her termination on May 10, 2012.

13.    Between April 18, 2011 and April 23, 2011, Plaintiff was sexually harassed by a male co-worker, Benjamin Castle.

14.    Castle made inappropriate remarks to Plaintiff that were sexual in nature.

15.    Castle told Plaintiff he was a "bad boy" and showed her sexually explicit pictures at work.

16.    On April 28, 2011, Plaintiff reported the sexual harassment from Castle to her supervisor, Bob Cook, who was Lead Designer.

17.    Cook informed other members of management, including Mark Welsh (Electrical Supervisor) and Joe Napper (Manager of Electrical Engineering).

18.    Additionally, Plaintiff reported the harassment to HR representative, Linda Taylor.

19.    In response to Plaintiff's reports of sexual harassment, the Defendants reprimanded Castle and suspended him for 3 days beginning May 5, 2011.

20.    Castle returned to work on May 9, 2011 and began to harass, intimidate, and act hostilely toward Plaintiff because she had reported his sexual harassment.

21.    Castle worked in close proximity to Plaintiff.  He sat only 2 cubicles away from her and they shared the same copier and attended the same meetings.

22.    Castle began staring and grunting at Plaintiff in an effort to intimidate and harass her.

23.     During a meeting on May 10, 2011, Castle stared at Plaintiff menacingly while Plaintiff gave a presentation.  Castle did so in order to intimidate and harass Plaintiff.

24.     On May 11, 2011, Plaintiff reported Castle's retaliation to Cook.  Plaintiff told Cook that Castle was acting in a hostile manner and informed him that she felt Castle was trying to intimidate her and make her uncomfortable.

25.     On approximately August 15, 2011, Plaintiff went to lunch with Cook.

26.     Cook informed Plaintiff that Joe Napper had expressed the belief that Plaintiff would be terminated due to her complaint of sexual harassment.

27.     Cook told Plaintiff that Napper said he felt responsible for Plaintiff's predicted termination because he had encouraged her to report the sex harassment.

28.     Castle continued to act in an intimidating and hostile manner to Plaintiff.  On approximately August 18 and 19, 2011, Castle stared at Plaintiff in a threatening and intimidating manner.

29.     Castle stared at her so intently that he ran into a wall on one occasion and bumped into an individual on another occasion.

30.     Plaintiff reported these incidents of Castle's intimidating behavior to Bob Cook.

31.     Still, Defendants took no steps to remedy Castle's behavior.

32.     On September 6, 2011, Plaintiff filed formal charges of discrimination and retaliation with the EEOC.

33.     On October 11, 2011, Defendants sent an e-mail to several staff members, including Castle and Plaintiff, informing them that Plaintiff filed a formal charge about Castle to the EEOC.

34.   Plaintiff anticipated further retaliation after the e-mail and suffered a panic attack and hives on her face and neck.

35.   On October 19, 2011, Plaintiff continued to have symptoms related to the intimidation and harassment she was experiencing at work.  She visited her doctor, who kept her off work for the remainder of the week due to acute stress from the harassment/retaliation.

36.   On October 24, 2011, Napper apologized to Plaintiff for "not handling the situation with Benjamin Castle appropriately."

37.   Soon thereafter, Defendants moved Castle's work station, purportedly as an attempt to remedy the retaliation.

38.   This attempt to remedy the retaliation was insufficient, as Castle was still on the same floor as Plaintiff and they continued to share a printer/copier.

39.   Castle's intimidation and retaliation continued. On October 25, 2011, Castle stared at Plaintiff, audibly grunted at her, and almost physically collided with Plaintiff.

40.   Plaintiff reported Castle's behavior to Napper and told him that Castle's retaliation was impacting her health.

41.   Napper apologized to her and indicated that Defendants had handled the incident inappropriately, and agreed that Defendants had failed to follow the company's "zero tolerance" policy.

42.   On February 12, 2012, Plaintiff received a positive performance review.

43.   Soon thereafter, Defendants hired Nancy Toomay to takeover some of Plaintiff's job responsibilities.  Plaintiff had been satisfactorily performing the position alone since her hire and there was no increase in her workload at that time.

44.     Defendants directed Plaintiff to train Toomay.  Plaintiff did so.

45.     On March 21, 2012, the EEOC dismissed its charges against the Defendants.

46.     Shortly thereafter, Plaintiff was informed that there was not enough work for both she and Toomay.  Plaintiff's hours were reduced week by week.

47.     On May 10, 2012, Plaintiff was laid-off purportedly due to "lack of work." This reason is false and merely a pretext for illegal retaliation because of Plaintiff's reports internally and at the EEOC.

48.     Defendants hired Nancy Toomay as Plaintiff's replacement.

49.     Defendants' actions and statements show that Defendants retaliated against Plaintiff for complaining about Castle and for filing with the EEOC.  Defendants believed that they were free to retaliate against Plaintiff because the EEOC dismissed Plaintiff's initial charge and Defendants felt they was no longer under the scrutiny of the agency.

50.     Plaintiff was discharged from her job and replaced by an individual who had not engaged in protected activity.

51.     Plaintiff suffered an adverse employment action when she was terminated from Defendants

52.     As a direct and proximate result, Plaintiff has suffered and will continue to suffer loss of wages, benefits and other economic losses as well as mental/emotional damages.

**COUNT I**
**VIOLATION OF TITLE VII**
**RETALIATION**

53.     Plaintiff incorporates by reference all the above allegations as if stated in full herein.

54.     At all relevant times, Plaintiff was an employee and the Defendants her employer within the meaning of Title VII.

55.     At all times, Defendants were aware of the harassment and retaliation Plaintiff suffered as set forth above, yet declined to intervene or remedy it.

56.     Under Title VII, the Defendants were obligated to refrain from retaliating against Plaintiff because of complaints regarding sex harassment and retaliation.

57.     Under Title VII, the Defendants were obligated to refrain from creating or maintaining a retaliatory hostile work environment because of complaints of sex harassment and retaliation.

58.     Under Title VII, the Defendants were obligated to refrain from retaliating against Plaintiff for opposing discrimination or retaliation.

59.     Under Title VII, Defendants owed Plaintiff a duty to refrain from retaliating against her for engaging in activities protected by Title VII, and to remedy any retaliation she reported from co-worker/harasser Castle.

60.     Defendants' duties to protect Plaintiff included refraining from taking action against Plaintiff that would dissuade a reasonable employee from engaging in activity protected by law.

61.     Plaintiff engaged in protected activity for purposes of Title VII by raising her concerns regarding sexual harassment and retaliation with the Defendants.

62.     Plaintiff engaged in protected activity for purposes of Title VII by filing a charge in the EEOC.

63.     In violation of this statutory obligation, the Defendants retaliated against Plaintiff by failing to remedy her complaints of retaliation and allowing her to be subjected

to harassing, demeaning, intimidating, threatening, and abusive behavior because of her protected activity as set forth above.

64.    In violation of this statutory obligation, the Defendants created and maintained a retaliatory hostile work environment because of Plaintiff's protected activity when it allowed, condoned, and permitted employees to harass, demean, and intimidate, Plaintiff because of her protected activity as set forth above.

65.    In violation of this statutory obligation, the Defendants retaliated against Plaintiff because of her protected activity and opposition to the violation of her rights by allowing co-workers to maintain the harassment, retaliation, and hostile work environment, by failing to remedy the harassing behavior of employees, and by terminating Plaintiff.

66.    As a direct result of the violation of Plaintiff's civil rights as alleged above, Plaintiff has and will continue to experience lost earnings and benefits; Plaintiff has and will continue to experience emotional distress, humiliation, loss of reputation and mental anguish.

67.    Defendants' conduct was willful and malicious entitling Plaintiff to punitive damages.

Accordingly, Plaintiff requests the following relief:

    A.    An order awarding compensatory damages including but not limited to back pay, front pay, and emotional damages;

    B.    An order awarding punitive damages;

    C.    An order requiring Defendants to correct the hostile work environment existing at the job;

    D.    An order reinstating her or providing front pay in lieu of reinstatement;

E.      An order awarding her statutory attorney fees and reimbursement of litigation costs.

F.      An order awarding her such other relief the court deems just and equitable.

**COUNT II**
**VIOLATION OF ELCRA**
**RETALIATION**

68.     Plaintiff incorporates by reference all the above allegations as if stated in full herein.

69.     At all times, Defendants were aware of the harassment and retaliation Plaintiff suffered as set forth above, yet declined to intervene or remedy it.

70.     Under the ELCRA, the Defendants were obligated to refrain from retaliating against Plaintiff because of complaints regarding sexual harassment and retaliation.

71.     Under the ELCRA, the Defendants were obligated to refrain from retaliating against Plaintiff for opposing discrimination or for engaging in protected activity.

72.     In violation of this statutory obligation, the Defendants retaliated against Plaintiff because of her protected activity by allowing co-workers to maintain the harassment and hostile work environment reported, by condoning the harassing behavior of employees, and by terminating Plaintiff.

73.     As a direct result of the violation of Plaintiff's civil rights as alleged above, Plaintiff has and will continue to experience lost earnings and benefits; Plaintiff has and will continue to experience emotional distress, humiliation, loss of reputation and mental anguish.

74. Defendants' conduct was willful and malicious entitling Plaintiff to punitive damages.

Accordingly, Plaintiff requests the following relief:

A. An order awarding compensatory damages including but not limited to back pay, front pay, and emotional damages;

B. An order awarding punitive damages;

C. An order requiring Defendants to correct the hostile work environment existing at the job;

D. An order reinstating her or providing front pay in lieu of reinstatement;

E. An order awarding her statutory attorney fees and reimbursement of litigation costs.

F. An order awarding her such other relief the court deems just and equitable.


PITT, McGEHEE, PALMER, & RIVERS, PC


By:    */s/ Andrea J. Johnson*
Andrea J. Johnson (P74596)
Attorneys for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800

Dated:  February 23, 2015

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Julie Thompson

      Plaintiff,                          Case No.
                                              Hon.
v.                                           Magistrate

URS Corporation, and
URS Energy & Construction, Inc.,

      Defendants

---

Andrea J. Johnson (P74596)
Pitt, McGehee, Palmer & Rivers PC
Attorneys for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
Tel: 248-398-9800
Fax: 248-398-9804
ajohnson@pittlawpc.com

---

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues to the within cause of action.


                               PITT, McGEHEE, PALMER, & RIVERS, PC


                        By:     */s/ Andrea J. Johnson*
                                 Andrea J. Johnson  (P74596)
                                 Attorneys for Plaintiff
                                 117 West Fourth Street, Suite 200
                                 Royal Oak, Michigan 48067
                                 (248) 398-9800

Dated: February 23, 2015